## AUD v. MAGRUDER.

The maker upon the face of a promissory note, with whatever motive or purpose he may sign it, is bound by the contract which he signs, according to the legal effect and meaning of the words.· He can not vary that meaning by parol.

Where the words import an unconditional promise to pay the payee so much money at a certain time, the law affixes to this unequivocal language its obvious signification. The payor is not permitted to contradict the words by showing that when he promised to pay absolutely, he meant to bind himself to pay conditionally, or on some contingency, or if another did not, or if demand was made and notice given.

One who signs a note to pay absolutely at a certain time, although he writes the word *surety* to his name, is not guarantying another's contract, but he is making his own; and whether the consideration of the contract enure to him or to his friend, is wholly immaterial, so far as the construction and obligation of it are concerned.

An endorsement or a guaranty of a note is wholly different. It is an agreement of itself—a new contract undertaken for another, that the latter will perform his contract.

The difference between a maker and an endorser or guarantor, is, that the contract of the first, by its terms, imports an unconditional obligation to pay money—that of the last, by its terms, imports a conditional obligation.  The rules of law settle this species of contract, as well as others, and prescribe how they may be created—their legal effect, and mode of enforcement.

The word *surety*, written opposite the name of one of the makers, indicates no more than that, as between the *payors*, such maker is his *surety*.  It is convenient for the purpose of evidence, in case the surety has to pay the money, but it does not in any way control the words of the note as between such payor and the payee.

It is useless to inquire into the intent of the payor in such a case ; the intent must be presumed to be according to the law.

The conservative doctrine of *stare decisis* was never designed to protect manifest innovations upon the well-settled principles of law.

The case of Bryan v. Berry, (6 Cal. R., 394,) overruled.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

This was an action on a joint and several promissory note, executed by George Rowe and the respondent, Lloyd Magruder, and delivered to the appellant.  Suit was brought against both Rowe and Magruder.  The defendants filed separate answers. Rowe pleaded his discharge under the Insolvent Law, and Magruder set up, as a defence, that his liability on the note was only secondary ; that the same appeared on the face of the note ; that he was only a surety, and that payment had not been demanded of Rowe at the maturity of the note, and that he was not notified of the non-payment thereof.

The note is in the usual form of a joint and several promissory note.  But after the signature of the defendant Magruder, is added the abbreviation "scty." On the trial, Magruder proved by oral testimony that plaintiff had admitted that he (Magruder) was a surety on the note sued on, and that no part of the sum of money mentioned in the note, passed into the hands of Magruder, and that the same was borrowed by the defendant Rowe, for his exclusive benefit.  To the admissibility of which

evidence the plaintiff objected, on the grounds that such evidence contradicted and varied the terms of the note, which objection was overruled by the Court, and plaintiff excepted.  It was admitted by the plaintiff, on the trial, that the letters "scty," after the signature of the defendant Magruder, were intended for the word "security."

The case was tried without a jury, and the Court found:

1. That defendant Magruder executed the note as surety.

2. That his liability is secondary.

3. That at the time of the execution of the note, the plaintiff knew that the money for which the note was given, was wholly for the use and benefit of the defendant Rowe, and that defendant Magruder was only an accommodating maker.

4. That at the maturity of the note, no demand for payment of the same was made of the defendant Rowe, and no notice of demand and non-payment was given to defendant Magruder.

Defendant had judgment, and plaintiff appealed to this Court.

*Reardan, Mitchell & Smith,* for Appellant.

The only question involved in this record is this, does the word "security," after the signature of the respondent, denote his relation to the other promisor, or does it show the character of his liability to the payee or holder?  Did the respondent contract to pay the note at its maturity? or did he only agree to pay upon condition of demand, dishonor, and notice?  This is the question.

The counsel for the appellant is aware that the principle contended for by the respondent has been by this Court laid down in the case of Brown *v.* Berry, 6 Cal., 394, and they also fully appreciate the doctrine of *stare decisis,* when important interests have grown up, and valuable rights have been acquired under and upon the faith of a former decision.

But when the reason of the rule ceases, and when, as in this case, the rule as laid down is an admitted departure from the law, as settled both in Europe and in the United States, and when the adherence to a ruling would work great wrong and injustice to innocent parties who have acted upon a legal principle that was supposed too well settled ever to be disturbed, the counsel for appellant believe that they may consistently, with the greatest respect for the decisions of this Court, question both the soundness and the propriety of the law enunciated in the case above referred to.

This case should be decided according to the rules of the law merchant, which we understand to be a uniform system adopted among commercial nations for the interpretation of commercial contracts.

The law defining and fixing the liabilities, duties, rights, and privileges of the several parties to negotiable promissory notes

and bills of exchange, has been so long settled and uniformly acted upon, that it has become as thoroughly incorporated in our system of jurisprudence as though it were a positive statute.

1. The only competent evidence in this case before the Court, was the note itself; there was nothing on the face of the note to show that the defendant signed as surety, or that his liability was secondary, unless the letters "scty" after his signature be held as conclusive evidence of those facts.

The word "security" or "surety," after one of the signatures at the foot of the note, signed by two or more persons, only serves to ascertain the relation of the makers to each other, and operate as notice of that relation to the other parties thereto, and does not change the rights of the payee or subsequent holder. Story on Prom. Notes, § 57.

Counsel for appellant have in vain sought to find a single case (except in this Court) where a Court has held, or has even been asked to hold, that a party who had signed a negotiable instrument in the place usually occupied by the makers' names, (as in this case,) was only secondarily liable to the payee or subsequent holder, and was entitled to all the rights and privileges of an endorser.

The theory upon which the Court below decided this case, following the decision of this Court in Bryan v. Berry, is, that the contract of the defendant Magruder, with the plaintiff, was merely that of an endorser, and not an original promisor.

Now, the contract of an endorser is clear, defined, and well understood, wherever the law merchant is recognized; he undertakes to pay the note if the maker does not, provided the holder use due diligence; and provided demand be made at its maturity, and due notice given him of the dishonor.

By the uniform usage and custom among merchants, the place of signing furnishes an unmistakable indication of the character of the party signing, whether as a maker or endorser.

The contract of an endorser is separate and distinct from that of the makers or original promisors, and is supported by a different consideration. Hunt, Administrator, v. Adams, 5 Mass., 358. See, also, Palmer v. Grant, 4 Conn., 389; Rawstone v. Parr, 3 Russ., 424.

2. But, even admitting that the defendant Magruder signed the note as surety, still we insist that it can make no difference, so far as his liability to the plaintiff is concerned. The respondent signed a joint and several promissory note, whereby he agreed expressly to pay the note at its maturity; not to pay it if the other party refused or failed to do so—not upon condition that a demand should be made upon Rowe in due season, and notice of the dishonor given to him in proper time—but, on the contrary, without a single condition or reservation, either expressed upon the face of the note, or implied from the place

where he affixed his signature. We admit that the respondent added the word "security," or what was intended for that word, after his signature; but that was done, not to inform the holder that he (Magruder) was an endorser, and therefore entitled to notice of demand and non-payment, but the sole intention was to show the relation between him and the other maker, to enable him to recover indemnity from Rowe in case he had to pay.

We therefore insist that a demand and notice were not necessary. Magruder, the respondent, was not entitled to the privileges and rights of an endorser, but must be treated as original promisor. Story on Bills, § 372; Allen v. Rightmire, 20 John., 367; Lecqueer v. Prossor, 1 Hill, 256; 4 Hill, 420.

In Morris v. Bird, 11 Mass., 438, the Court says: "What, then, was the effect of his signature? It was to make him absolutely liable to pay the contents of the note. The holder chooses to consider him as a surety, binding himself originally with the principal, and we think he has a right to do so."

If he was a surety, then he can be sued as an original promisor. In Hunt v. Brigham, 2 Pick., 581, the Court uses this language: "The surety is a guarantor, and, therefore, it is his business to see that his principal pays."

This Court, in Bryan v. Berry, 6 Cal. R., 397, said: "It is not, therefore, so much the position of the party's name upon the paper which denotes his liability, (although it frequently does so,) but it is the intention with which he executes it, if such intention is made to appear by the note itself, which determines whether his liability is primary or secondary."

Now, to what portion of a paper containing a written contract are we to look to ascertain the intention of the contracting parties? Are we to be confined to any particular part? Are we to be limited to a single word which one party may see fit to write after his signature? If we are at liberty to go outside of the instrument itself to ascertain the intention of the parties signing it, we could probably discover from the respondent himself, that when he put his name to the note he never intended to claim the rights and privileges of an endorser; that he signed it as a joint and several maker for the very purpose of avoiding the necessity of a demand and notice of non-payment; that he never for a moment supposed that he was entitled to any such rights or privileges at the time of signing; that the word "security" was appended to his name merely to insure or facilitate the proof of his relation to Rowe, in case he should be compelled to pay the note.

We insist that in this case the respondent's intention, at the time he signed the note in question, was to make himself an original promisor. We must take into consideration the fact that parties are presumed to contract with reference to the law governing the subject of the contract. Now, until after this

note was executed, it had never been pretended that one who had signed his name at the foot of a joint and several promissory note, was entitled to the rights and privileges of an endorser, although he may have added the word "security" to his signature—custom, usage, and every-day experience, had taught every one that in order to avail himself of the rights and privileges of an endorser, he must take care to sign the note in the place where endorsers' names are invariably found; where the etymology of the word itself indicates that it should be found. So common is the practice and so uniform the usage for one who intends to be an endorser only, to write his name on the back of the note, that if one who, intending to assume only the liability of an endorser, should write his name on the face, or at the bottom of a joint and several promissory note, he would at once stand convicted, in the opinion of every business man, as guilty of the most deplorable ignorance of the plainest rule of commercial law.

3. But disregarding authorities and precedents, and, in the language of this Court in Bryan *v.* Berry, "to go back to the fountain-head to ascertain a rule founded upon reason, and operating with uniformity and certainty," let us examine somewhat into the philosophy of this question.

The contract of endorsement is one of transfer, the consideration is one moving to the payee; the payee, for a certain inducement and consideration, presumed to be valuable, transfers the note made payable to him or to his order, and for the same consideration agrees to pay the note, if the maker does not, upon condition that the holder make a demand of the maker, at the maturity of the note, and upon refusal to pay, give him due notice of those facts; the endorser does not undertake to pay, in any event, but only upon certain conditions, which follow the transfer, and his endorsement.

Now, the contract of a surety is that he will pay the note at its maturity. No conditions attach to his contract; he is bound to pay whenever the note becomes due; he has stipulated expressly to do so; the holder need not look to the principal, but may resort in the first instance, to the surety, as soon as the paper matures; the surety, according to the unequivocal, unconditional terms of his agreement, must pay, and then must look to his principal for indemnity.

The contract of an endorser is between the payee and a subsequent holder; the contract of a surety, on the contrary, is between the surety and the payee. The endorser says: "I will pay this note if the maker does not, provided you make demand of the maker at the proper time, and if the maker refuse to pay, you give me due notice."

The surety says, unconditionally, "I will pay this note when it becomes due."

To say now that there is no distinction between the liability

of a surety and that of an endorser, would be to unsettle in one sentence the whole law concerning commercial paper, and so far " from enabling contracting parties easily and clearly to comprehend their respective rights and duties," as this Court would seem to desire, embarrassment, confusion, and litigation, would necessarily follow. This Court can not expect, upon a question of commercial law, (however much its authority may be respected within the boundaries of California,) that its opinion ignoring rules and principles which have been acted upon and recognized as binding in every commercial state and community for the last century, will be adopted. We are fully conscious that this Court, in laying down a new rule in one of the most important branches of commercial law, did not intend to be understood as anticipating that such new rule would be adopted in the other commercial States, and therefore we would suggest that the end proposed to be accomplished by this Court, namely, the settlement of the law as to this point, will not probably by this decision be accomplished.

Unless the law merchant, as it is understood all over the commercial world, be ruled in this State, we are apprehensive lest our career, as a commercial State, will receive a severe check. We have always supposed that the chief excellence of this branch of the law consisted in its uniformity and certainty; that the success and prosperity of every commercial state was inseparably connected with the idea that its contracts would receive the same interpretation in a foreign Court of Justice as would have been placed upon them by the judicial tribunals of the place where they were made.

If our Courts should feel at liberty to depart from any hitherto fixed rule of commercial law, because the reason of such rule was not apparent, then we must prepare ourselves to see the mercantile transactions of an industrious, energetic, and enterprising people, clogged and obstructed at every step; doubt would take the place of certainty, confusion would be substituted for uniformity, and jealous mistrust for implicit confidence.

*Belcher & Belcher* for Respondent.

The counsel for the plaintiff objected to the oral testimony on the ground of its contradicting or varying the terms of the note. Such was the object or effect of the testimony, and the objection seems, in this Court, not to be insisted on, since the point is not argued in appellant's brief. The rule is now well settled, in the United States, that in an action directly on the note, a party, though he appear to be principal, may show by parol that he was in fact only a surety. Harris *v.* Brooks, 21 Pick., 195; Carpenter *v.* King, 9 Met., 511; Grafton Bank *v.* Kent, 4 N. H., 221; Branch Bank *v.* James, 9 Ala., 947.

In signing the note, the respondent placed after his name the

contraction "scty," which the plaintiff admitted, at the trial below, he knew was intended for the word "security." This was full notice of the character of his liability on the face of the note.

The respondent, being a surety, and his character as such appearing on the face of the note, demand and notice were necessary to fix his liability. Bryan v. Berry, 6 Cal., 394; Kritzer v. Mills, 9 Cal., 21.

This, the counsel for the appellant admit, if the decision made in Bryan v. Berry is to stand, but they deny the correctness of that decision, and ask the Court to overrule it.

No good reason, it is believed, has been or can be assigned why the rule laid down in Bryan v. Berry should be changed. It was re-affirmed, "after great deliberation," on a second consideration of the same case, and again in Kritzer v. Mills, and has been acted on throughout the State. It is simple, and well understood, and was so emphatically stated as to lead the profession and public to believe that here, at least, was one point in the jurisprudence of the State fully and finally settled.

Nor was the case of Bryan v. Berry the first to announce the rule. A series of decisions, covering nearly the entire judicial history of the State, has been uniform to the point, where the position of the signer's name upon the note, or any word or words attached to his name, have indicated his intention to become other than an original promisor, that his rights and liabilities were those of an endorser, *stricti juris.* Riggs v. Waldo, 2 Cal., 485; Lightstone v. Laurencel, 4 Cal., 277; Bryan v. Berry, 6 Cal., 394; and other cases there cited.

In Lightstone v. Laurencel, the defendant, Sansevaine, appeared to be a surety on the face of the note, and the Court held that demand and notice were necessary to fix his liability.

These numerous adjudications, it would seem, should be held sufficient to finally put at rest this vexed question. The doctrine of *stare decisis,* so often invoked by this Court, and the reputation of the Court itself, require it.

BALDWIN, J., delivered the opinion of the Court—FIELD, J., concurring.

This record presents the question whether a joint maker of a promissory note, signing it as surety, is entitled to demand and notice before he can be held to pay it. We state the proposition in this simple form; for, though some technical objections are interposed to the mode of proof, we do not think it necessary to notice them.

An unvarying current of decisions in other States, and the well-settled doctrine of the English Courts, places the obligation of the surety in such cases upon the footing foan original promise; and such, we apprehend, has been the understanding of the

Aud *v.* Magruder.

profession and of commercial men generally in this State, until the decision of Bryan *v.* Berry, (6 Cal., 394,) which announced a contrary doctrine. Indeed, the Court, in Humphreys *v.* Yale, (5 Cal., 173,) recognizes the same rule. In that case, the defence was that the note had been altered. The alteration was alleged to be made by tearing the word "surety" from the note, where it stood opposite to the name of Yale. The complaint did not aver demand and notice, but counted on the note as an original promise, so that the alteration was material; it changed the contract from one upon which the plaintiff could not recover to one upon which he could. The Court say, in delivering the opinion: " The demurrer was well taken : *first,* because the owner does not aver that the alteration was made with the knowledge or consent, or by the authority of the plaintiff; and, *second,* because the alteration was not material so far as it affects any of the matters set up in defence. The defendants were liable to the plaintiff, whether they signed as principals or sureties, and it is well settled that an alteration which does not alter the meaning, the nature, or the subject-matter of the contract, is immaterial." The matter set up in defence was this alteration ; and, although other grounds of objection to the answer were given, yet this does not impair the authority of the decision as to this point.

The case was argued very elaborately upon the final hearing, and the briefs of counsel exhibit a thorough examination of the whole doctrine involved.

The case of Bryan *v.* Berry seems to us to rest upon mistaken views of the relation which a party signing a joint note with another, for the latter's accommodation, bears to the creditor. It assumes that such surety is a mere guarantor or endorser. But the two classes of obligation are widely variant. *The maker* upon the face of the paper, with whatever motive or purpose he may sign it, is bound by the contract which he signs, according to the legal effect and meaning of the words. He can not vary that meaning by parol. The words import an unconditional promise to pay the payee so much money at a certain time. The law affixes to this unequivocal language its obvious signification. The payor is not permitted to contradict the words by showing that when he promised to pay absolutely, he meant to bind himself to pay conditionally, or on some contingency, or if another did not, or if demand was made and notice given. This contract being his own, and precise in its terms, he must fulfill it according to those terms. He is not—and this is the distinction in the two classes of engagements—guarantying *another's contract,* but *he is making his own ;* and whether the consideration of the contract enure to him or to his friend is wholly immaterial, so far as the construction and obligation of it are concerned. An endorsement or a guaranty of a note, is wholly different. It is an agree-

19

ment of itself—a new contract undertaken for another, that the latter will perform his contract. The difference between a maker and an endorser or guarantor is, that the contract of the first, *by its terms*, imports an unconditional obligation to pay money— that of the last, by its terms, imports a conditional obligation. The rules of law settle this species of contracts as well as others, and prescribe how they may be created—their legal effect, and mode of enforcement. The creditor may take his security in either form; the other parties may contract or not as they choose; but the contracts, when made, must stand or fall by the legal rules prescribed for them respectively. There is no magic in the words "surety" or "guarantor," which gives to a contract made by this class of contractors any effect denied to the contracts of other persons. A surety for another may bind himself to a creditor for his principal, if he uses apt words of obligation, just as an agent may be bound for his principal, or a principal for himself—the obligation arising from the language of contract, not the man who makes it. We can see no reason, if the parties so agree, why the guarantor or endorser may not bind himself, absolutely and primarily, to pay the debt of another; nor why a man may not as well bind himself primarily to pay a note for another as surety for the other, as well as secondarily. He may pledge his goods or credits, or note, for him, and bind himself, without respect to any act to be done by the principal or the creditor. Precisely such is the nature of an obligation made in absolute terms, on a consideration, by A, to pay so many dollars to B by a certain day, though the note should say in the body of it that A promised to pay for C, or as surety for C. If such a note could be enforced as an original promise, if made by A alone, how is it less an original promise when made by A and C, jointly and severally, as in this case, though the joint note showed that A made it as surety for C? It is immaterial to the payee how or why A signs it; that is a matter between the two payors; he is satisfied with holding them both as principals to him, and in doing this he is only enforcing the language of their own voluntary contract, according to its own plain words. In truth, the error, as we take it, in *Bryan v. Berry*, is, in supposing that whenever a party is shown to be a surety he is necessarily, without reference to the form of the engagement, a guarantor. A guarantor may, usually, be a surety, but a surety is not necessarily a guarantor. The Court say : "It is not so much the position of the party's name upon the paper which denotes his liability, (although it frequently does so,) but it is the intention with which he executes it, if such intention is made to appear by the note itself, which determines whether his liability is primary or secondary." This may be; but we think, with great deference, that the position of the names beneath the words which import a direct, primary obligation to pay the money to

the payee, is conclusive evidence of that intention; the bare name on the back of the paper might not be.  The word " surety," written opposite the name of one of the makers, is held to indicate no more than that, as between the payors, such maker is his surety.  It is convenient for the purpose of evidence, in case the surety has to pay the money, but it does not in any way control the words of the note as between such payor and the payee; for, as we said before, there is no necessary inconsistency between an absolute engagement to pay money, and paying it on behalf or as security for another man.  (Story on Promissory Notes, § 57; Hunt v. Adams, 5 Mass., 358; Morris v. Bird, 11 Mass., 438, and the numerous authorities cited in the appellant's brief.)

If the law be as we have stated, it is useless to inquire into the intention of the payor in such a case; the intent must be presumed to be according to the law.  But if we were to hazard any opinion upon the subject, apart from this, we incline very strongly to think that, among business men, the idea is very general that a person signing a note as surety for another, makes himself immediately and directly responsible for the debt.

In overruling the case of Bryan v. Berry, we feel less reluctance because we think that the principle there laid down is of injurious import.  We think that principles of commercial law, long established and maintained by a consistent course of decision in the other States, should not be disturbed; that the tendency of such disturbance, in any instance, is to confusion and uncertainty, and gives rise to perplexing litigation, and doubts and uneasiness, in the public mind.  Almost any general rule governing commercial transactions, if it have been long and consistently upheld as a part of the general system, is better than a rule superseding it, though the latter were much better as an original proposition.  Men knowing how the law has been generally received and repeatedly adjudged, govern themselves and are advised by their counsel accordingly; but if Courts establish new rules whenever they are dissatisfied with the reasons upon which the old ones rest, the standards of commercial transactions would be destroyed, and commercial business regulated by a mere guess at what the opinion of Judges for the time might be, and not by a knowledge of what the doctrines of recognized works of authority and the precedents of the Courts are.  The commercial law has a system of its own, built up by centuries and the wisdom of learned jurists all over the world.  It is not local, but applicable to all the States, with few modifications; and California, eminently commercial in its character, and in close commercial connection with the other States, finds her interest and safety in adhering to the well-settled general rules which prevail in those States as the laws of trade.  We repeat, the stability and certainty of these rules are of more importance

than any fancied benefits which might accrue from any innovation upon the system. Innovation begets innovation, and we can not always see with clearness what is to be the consequence of the new rule established. This case itself is a good illustration ; for, if the doctrine be carried to its logical consequences, and whenever it appears, on the face of a security for money, a party is a surety, he is entitled to be held as a guarantor, what becomes of undertakings, acceptances for accommodation, etc. ? for, in the latter cases, why might not parol evidence be admitted to shew that the party was only accommodation acceptor, in a contest between the original parties, as to shew the same fact, as is frequently done, when suit is brought to recover money of the principal which the acceptor has paid on the acceptance ? And so, where the party does not sign as surety, but really is such?

The doctrine of *stare decisis*, seriously invoked by the respondent's counsel, can have no effect; or, if any, only the effect to induce us the more readily to return to a principle recognized, we believe, for many years everywhere else in the commercial world. The conservative doctrine of *stare decisis* was never designed to protect such an innovation.

Judgment reversed, and cause remanded.