[S. F. No. 9910. In Bank.—December 30, 1922.]

THOMAS B. McCARTHY, Respondent, v. CHARLES
MADISON et al., Defendants; JESSIE MADISON,
Appellant.

[1] Promissory Note—Husband and Wife—Wife as Surety—In-
sufficiency of Evidence.—In this action to recover on a promis-
sory note executed by a husband and wife in consideration of
the forbearance to sue on a prior note of the husband, the
evidence supports the finding that the wife did not, as con-
tended by her, sign the note as surety only.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. J. J. Van Nostrand,
Judge. Affirmed.

The facts are stated in the opinion of the court.

Powell & Dow for Appellant.

R. H. Cross and Arthur H. Brandt for Respondent.

LAWLOR, J.—Plaintiff, Thomas B. McCarthy, com-
menced this action on September 21, 1915, to recover the .
amount of a promissory note executed by defendant, Mrs.
Jessie Madison, and her husband, Charles Madison, who was
formerly a defendant in this action, and who died on June
21, 1917. The note is as follows: "6132.50. San Francisco,
California, September 22, 1911. One day after date for
value received we or either of us promise to pay to the
order of Thomas B. McCarthy at San Francisco, California,
six thousand one hundred thirty-two dollars and fifty cents,
with interest thereon at the rate of seven per centum per
annum, from date until paid, principal and interest payable
in United States Gold Coin only; said interest payable
monthly and if not paid as it becomes due, to be added to
the principal and become a part thereof, and to bear inter-
est at the same rate. In case suit is brought thereon to com-
pel the payment of this note or any portion thereof, the
payers promise to pay costs thereof and such attorney's fees
as may be incurred. Chas. Madison. Mrs. Jessie Madison.

Witness R. H. Cross." On December 30, 1919, the action was dismissed as to defendant Charles Madison.

Defendant's answer was filed on July 3, 1918, and in it she alleged she was induced to sign the note by the threats, menace and intimidation of plaintiff and his attorneys and that there was no consideration for its execution. On April 16, 1920, she filed an amendment to the answer, in which she alleged she signed the note as surety at the request of defendant, Charles Madison, who was the principal, and that this fact was known to plaintiff and his attorneys. As a supplemental answer or separate defense she alleged that the release of defendant Charles Madison operated to discharge and release her as surety from all obligation on the note and she pleaded such release as a defense to plaintiff's claim.

Upon the trial the court found that the allegations of the answer were untrue and that defendant executed and delivered the note in consideration of the forbearance of plaintiff to sue on a prior note executed in plaintiff's favor by defendant Charles Madison alone, and in consideration of its surrender and cancellation and the extension of the time for the payment of the indebtedness. Pursuant to the findings judgment was entered for plaintiff, from which defendant takes this appeal.

[1] Appellant's contention is that the evidence shows defendant signed the note as surety only, that the findings to the contrary are therefore erroneous and that the release of defendant Charles Madison operated to release her. Supporting this contention is her own testimony that at the time the note was signed "Mr. Cross wished me to sign the note also, so that if Mr. Madison should come into possession of any property he couldn't turn it over to me. I simply signed as a surety," that with reference to the matter of suretyship "they wished me to sign with Mr. Madison so that I wouldn't have—so that he couldn't turn any property over to me. . . . I only signed as a surety on the note." In a deposition taken before the issue of suretyship was raised by the amendment to the answer, Cross had testified as follows: "He [defendant Charles Madison] said that he could not pay it, and could not give any security except the endorsement of his wife, Mrs. Jessie Madison, the defendant in this action. . . . Q. Did he say he would undertake to get

her to go as his security at that time? A. Yes, and told me she was in the city. . . . Q. Did he suggest to you that she might go security on this note, or did you suggest it to him? A. He suggested it to me. . . . Q. And you had ascertained, either through Mr. Madison or by some other means, that she had property, or might have property, and you felt that she would be sufficient, or some, security on that note? A. That is right. . . . Q. At the time the note was signed, did you explain to Mrs. Madison what it was for? A. Yes, sir. Q. What did you say? A. I asked her if she understood what she was doing, and she said she did, that Mr. Madison had explained it to her. I said that Mr. McCarthy held Madison's note and was intending to commence suit upon it, that we required him to give some security, and he had offered her as security on a new note." He explained his use of the words "security" and "surety" by stating that at the time the deposition was taken the question of suretyship had not been raised, that he was not speaking with reference to it and was not using those words in a technical sense.

Opposed to the foregoing evidence is the fact that the note was in form joint and several and the testimony of appellant that at the time the note was signed defendant Charles Madison met her on the street and they went to Cross' office together; that there was very little conversation; that Cross asked if they were ready to sign the note and she said, "Yes"; that she stated to Cross that defendant Charles Madison had told her what the note was for; that he mentioned the fact that there was a prior note; that Cross asked her if she fully understood what she was doing and that she answered that Mr. Madison had explained what the note was for. She stated this was about all the conversation that occurred. Cross testified that respondent had held an unpaid promissory note of defendant Charles Madison which he had unsuccessfully tried to collect, that defendant Charles Madison had offered to give a new note signed by himself and his wife, that the matter had been placed entirely in his hands by respondent and that appellant's account of the signing of the second note was practically correct. He further stated that the old note was delivered to defendant Charles Madison when the one of September 22, 1911, was executed; that he did not recall

anything having been said concerning the note being given to prevent defendant Charles Madison from transferring property to appellant and that nothing whatever was said about appellant being a surety for her husband. This testimony presents a conflict on the question as to the capacity in which appellant signed the note.

In *Casey* v. *Gibbons,* 136 Cal. 368, 371 [68 Pac. 1032], it was held that in attempting to show, under section 2832 of the Civil Code, that one has signed an obligation as surety only, it is necessary to allege and prove that the payee not only knew of the fact of suretyship, but consented to deal with the signer in the capacity of surety. There is nothing in the evidence in the case at bar to show that respondent or his agent Cross recognized appellant as a surety merely or consented that she act as such. Although in previous discussions the subject of her acting as a surety may have been considered, her own statement that she signed as such is the only evidence that that was the position she assumed when the note was finally executed. The evidence amply supports the finding that she was not a surety.

Because of this conclusion it is unnecessary to consider the point that appellant, as a surety, was released by the release of defendant Charles Madison.

The judgment is affirmed.

Sloane, J., Wilbur, J., Waste, J., and Lennon, J., concurred.

Shaw, C. J., dissented.