[S. F. No. 13639. In Bank.—December 21, 1932.]

PAUL H. GRANGER, Respondent, v. HENRY HARPER, Defendant; H. O. LANGSTAFF, Appellant.

McAdoo, Neblett & Clagett and Edward H. Mitchell for Appellant.

Fulton & Fulton, John M. Fulton, Robt. M. Fulton and George W. Jean for Respondent.

Morrison, Hohfeld, Foerster, Shuman & Clark, as *Amici Curiae* on Behalf of Respondent.

SHENK, J.—This is an appeal from a judgment for the plaintiff in an action to foreclose a chattel mortgage given to secure a promissory note signed by the defendants Henry Harper and H. O. Langstaff. A deficiency judgment was entered against the defendant Langstaff, who alone was personally served in the action. The defendant Langstaff appealed.

Issues were raised by the answer to the complaint based on the appellant's contentions that he signed the note as surety only; that the plaintiff knew that he signed as surety and consented to accept him as such; and that the subsequent taking by the creditor from the principal, Harper, of the chattel mortgage sought to be foreclosed served to release him from his obligation as surety.

The note is dated November 28, 1923, and is as follows:

"For value received, I promise to pay Paul H. Granger, at the First National Bank of Whittier, California, sixty days after date, the sum of $5,000 plus 7% interest per annum.

"HENRY HARPER.

"H. O. LANGSTAFF."

The testimony relating to the execution and delivery of the note and subsequent events is substantially to the following effect: The defendant Harper applied to the plaintiff for a loan of $5,000 to enable him to pursue his oil-drilling operations. The plaintiff declined to make the loan without security, and Harper offered to obtain Langstaff to go on the note, to which the plaintiff agreed. The note was executed the next morning at Langstaff's residence. Langstaff was introduced to Granger. The plaintiff himself wrote the

note and it was then signed by the defendants. The plaintiff gave to Harper a check for $5,000. It is not disputed that Granger would not have accepted the note without Langstaff's signature as comaker. Neither is it questioned that all parties knew and understood that the proceeds of the loan were received and used by Harper alone. The plaintiff admits that at the time he may have voiced the hope that Langstaff would never have to pay the note.

Subsequent to the maturity of the note and on May 20, 1924, Granger accepted from Harper a mortgage on certain oil-drilling machinery and other personal property used in his oil-drilling operations. The mortgage contained the statement that it was given to secure payment of the note hereinbefore set out; it contained a promise to pay attorney fees in event of foreclosure; and provided for payment in gold coin. Harper continued his oil-drilling operations and Granger loaned him some additional tools for the purpose. Harper's efforts, however, were not proving fruitful. In July, August and September, 1925, Granger wrote to Langstaff inquiring about and requesting payment, to which Langstaff made no reply. In December of that year Granger brought an action on the note alone against both defendants as comakers. Langstaff in that action defended on the grounds of lack of consideration, payment, and that the chattel mortgage which he set out in the answer had been given to secure payment of the note sued on, and that the plaintiff's remedy was an action in foreclosure. In November, 1926, a motion for a nonsuit in that case was granted on the ground that the debt of Langstaff on the note was secured by chattel mortgage and that pursuant to the provisions of section 726 of the Code of Civil Procedure the remedy of the plaintiff was to bring an action in foreclosure. Subsequently the present action to foreclose the mortgage was commenced.

The foregoing is a statement of the facts pertinent to an inquiry into the question whether the appellant is to be held only as a surety on the note. In this respect the trial court found that it is not true that Langstaff signed the note as surety; that it is not true that the plaintiff knew that he signed the note as surety, and that it is not true that the plaintiff consented to deal with him in the capacity of surety. The immediate question for determination is

whether the evidence sustains the findings on this phase of the case. If it does, the judgment is supported by the findings and must be affirmed.

■ The appellant contends that inasmuch as the note involved is non-negotiable the circumstance of his receiving no part of the consideration therefor, which was entirely for Harper's use and benefit, coupled with the plaintiff's knowledge of that fact, constitutes notice to the plaintiff of the surety relation and requires recognition by the plaintiff of the rights and privileges to be accorded Langstaff in such capacity.

The rule at common law that a party apparently bound on a written contract as a principal may show by evidence *aliunde* that he signed the contract as a surety for the principal debtor, and, if such fact is known to the creditor, such party will be bound as a surety only (*Hubbard* v. *Gurney*, 64 N. Y. 457; *Smith* v. *Tunno*, 1 McCord Eq. (S. C.) 443, 16 Am. Dec. 617; *Doughty* v. *Bacot & Seabrook*, 2 De Saus. Eq. (S. C.) 546; *Cummings* v. *Little*, 45 Me. 183; 1 Brandt, Suretyship, 3d ed., sec. 38), was in 1872 codified in the following language: "One who appears to be a principal, whether by the terms of a written instrument or otherwise, may show that he is in fact a surety, except as against persons who have acted on the faith of his apparent character of principal." (Sec. 2832 Civ. Code.)

*Shriver* v. *Lovejoy*, 32 Cal. 575, established the law prior to 1872 that the common-law rule was not adopted in this state and, until the enactment of section 2832 of the Civil Code, one who signed a contract apparently as a principal could not show that he was in fact a surety. (*Harlan* v. *Ely*, 55 Cal. 340, 343.)

*Harlan* v. *Ely, supra*, was the first decision to interpret the provisions of section 2832 of the Civil Code. The note involved there was secured by a crop mortgage and presumably, therefore, non-negotiable. The facts were established that the defendant never received any part of the loan, that all of the parties knew and understood that the loan was made and intended for the sole benefit of the principal debtor, and that as between the defendant and the principal debtor the former was merely a surety. In construing and applying the language of section 2832 it was held that the circumstance of knowledge alone on the part of the

creditor was not sufficient to show that as to the creditor the actual relation was different from the apparent relation, and that the trial court's conclusion that the defendant was accepted as a principal and not as a surety was not erroneous.

The next case on the interpretation of that section of the Civil Code is *Farmers' Nat. Gold Bank* v. *Stover,* 60 Cal. 387, involving apparently a negotiable note. The court there did not change the construction of section 2832 of the Civil Code announced in *Harlan* v. *Ely, supra,* though urged by counsel for the appellant to do so. It was held that a demurrer to the defense that the defendants executed the note as sureties for the comaker, to the plaintiff's knowledge, ＿was properly sustained, the court saying (60 Cal. 392): "The mere fact that the bank knew that the relation of sureties and principal existed between them and Stover does not, in itself, show that the bank consented to deal with them in the capacity of sureties. According to the face of the note the bank dealt with them as principals only; for as such they apparently executed and delivered the note. If, in fact, however, the bank dealt with them in a different capacity—as sureties and not as principals—it is incumbent on them . . . under section 2832 of the Civil Code . . . to aver and prove that the payee of the note not only knew of the fact of suretyship between them and their co-obligor, but consented to deal with them in that capacity. . . . ''

The courts of this state have continued to apply the provisions of section 2832 with the interpretation so announced in cases which involved negotiable notes and in cases which involved non-negotiable notes. (*Leeke* v. *Hancock,* 76 Cal. 127 [17 Pac. 937]; *San Bernardino Nat. Bank* v. *Colton L. & W. Co.,* 91 Cal. 124, 128 [27 Pac. 538]; *California Nat. Bank* v. *Ginty,* 108 Cal. 148 [41 Pac. 38]; *Casey* v. *Gibbons,* 136 Cal. 368 [68 Pac. 1032]; *Farmers' etc. Bank* v. *De Shorb,* 137 Cal. 685 [70 Pac. 771]; *Daneri* v. *Gazzola,* 139 Cal. 416 [73 Pac. 179]; *Osborn* v. *Hamilton,* 16 Cal. App. 634, 636 [117 Pac. 786]; *McCarthy* v. *Madison,* 190 Cal. 243 [212 Pac. 7].)

The cases of *Montgomery* v. *Sayre,* 91 Cal. 206 [27 Pac. 648, 649], *Pimental* v. *Marques,* 109 Cal. 406 [42 Pac. 159], *O'Conor* v. *Morse,* 112 Cal. 31 [44 Pac. 305, 53 Am. St.

Rep. 155], and *Eppinger* v. *Kendrick,* 114 Cal. 620 [46 Pac. 613], are relied upon by the appellant as relaxing the rigor of the rule of *Harlan* v. *Ely, supra,* and *Farmers' Nat. Gold Bank* v. *Stover, supra,* in the case of non-negotiable instruments. In *Montgomery* v. *Sayre, supra,* the note sued on, executed by the defendant Sayre as maker, was given as collateral security for the payment of another's note. It was stated in the opinion that under these circumstances "Sayre was in law a surety". Similar facts were involved in the other three cases relied upon. They are therefore not in point. Neither is there anything in the case of *Figari* v. *Olcese,* 184 Cal. 775 [195 Pac. 425, 15 A. L. R. 192], inconsistent with the application of the rule. In that case the word "witness" appeared opposite the name of one of the signers and the question presented was whether such signer could show that he had not become bound on the instrument.

The appellant urges that the adoption of section 3110 of the Civil Code as part of our Negotiable Instruments Law indicates that a different rule controls as to non-negotiable instruments in applying the provisions of section 2832 of the Civil Code. But it is manifest from the foregoing cited cases that in applying said section in the light of the facts in each particular case, the courts have neither noted the character of the instrument as to negotiabilty nor made any distinction on the basis of its negotiability or non-negotiability. The principle appears to have been applied alike to non-negotiable and to negotiable instruments that section 2832 of the Civil Code compels the party pleading the actual as differing from the apparent relationship to aver and prove that the plaintiff not only knew the fact of suretyship, but also that he agreed or consented to accept the surety in that capacity and not as a principal. If this were the first case on the subject we might be constrained to accord weight to the appellant's argument that, at least as to non-negotiable instruments, evidence of the suretyship relation and knowledge of that relation on the part of the plaintiff constitutes a *prima facie* case under the provisions of section 2832 of the Civil Code, and that the burden of going forward with evidence to show reliance on the apparent character has then shifted to the plaintiff. But the cases to the contrary are controlling.

■ It is conceded that Granger knew of the relationship of Langstaff to Harper on the note, and it is also conceded that no express agreement was made by Granger to accept Langstaff as a surety. The latter, however, contends that the evidence is susceptible of no other inference or conclusion than that Granger treated and dealt with Langstaff as a surety and therefore his consent to accept him as a surety is implied from his conduct. In most cases the intent in this respect can be read only from the circumstances and conduct of the parties. But we cannot say as a matter of law that the court's conclusion that the acts and words of the plaintiff were consistent with his accepting Langstaff as a principal was unjustified. From a review of the cases it must be said that unless the conduct of the plaintiff is plainly inconsistent with an acceptance of the appellant in his apparent character, a finding that the appellant signed the instrument as a principal cannot be disturbed on appeal. In a discussion of the evidence in this case it should perhaps further be noted that a large measure of the delay in arriving at a final disposal of this controversy is due to the appellant. The first action brought on the note alone he succeeded in having dismissed on the ground that the plaintiff should pursue the remedy provided by section 726 of the Code of Civil Procedure. If he considered himself a surety, he could have so pleaded and claimed exoneration in that action, which he did not do. The trial court is also entitled to look to the conduct of the appellant in arriving at its conclusion on the issue of the suretyship relation.

■ Finally, it may be pointed out that the fact that the note was written in the first person singular is not a circumstance controlling the question whether the appellant was accepted in the capacity of a surety. (3 R. C. L. 1139, sec. 355.)

We conclude that the finding of the trial court that it is not true that the plaintiff consented to deal with the appellant as a surety is supported by the evidence, and the finding supports the judgment.

The judgment is affirmed.

Seawell, J., Curtis, J., Preston, J., Langdon, J., Tyler, J., *pro tem.*, and Waste, C. J., concurred.