[L. A. No. 6077. Department One.—September 8, 1920.]

F. D. SILVIUS, Appellant, v. J. M. MORDOFF et al., Defendants; ELIZABETH SNOW, Respondent.

[1] MORTGAGE—FORECLOSURE—DEFICIENCY JUDGMENT.—In an action for the foreclosure of a mortgage, the failure to direct a deficiency judgment against the mortgagors for the full amount of the note, interest, attorney's fees and costs is error; where they made no defense and the complaint stated a good cause of action against them for the recovery of the full amount of the note, notwithstanding judgment was given for less than the amount of the note upon the issues raised by the answer of a subsequent lienholder.

[2] ID.—DISBURSEMENT OF MORTGAGE MONEY — CONSTRUCTION OF DWELLING—AGREEMENT BETWEEN MORTGAGEE AND JUNIOR LIENHOLDER—LIABILITY FOR BREACH INDEPENDENT OF NEGLIGENCE.—A mortgagee is responsible to the holder of a trust deed subject to the mortgage for the failure to perform his agreement with the latter to apply the borrowed money to the payment of labor and material used in the construction of a proposed dwelling upon the mortgaged premises, regardless of whether or not he was negligent in the disbursement of the money.

[3] ID.—FORECLOSURE — EVIDENCE — REPRESENTATIONS OF AGENT OF JUNIOR LIENHOLDER—INCOMPETENCY TO PROVE AGREEMENT.—In an action to foreclose a mortgage, testimony of the holder of a subordinate deed of trust that she was the owner of the lot prior to the execution of the mortgage and deed of trust and that in the sale of the lot she did not know the purchaser in the transaction, but dealt through an agent, who represented to her that

the purchaser was a prosperous builder and after obtaining title to the lot would borrow money on the mortgage to build a house on the lot, which representations she relied upon, is inadmissible to prove an agreement between the mortgagee and herself that the money borrowed on the mortgage should be applied in payment of labor and material for the construction of the building, where the representations were not made in the presence of the mortgagee and it is not shown that the latter had any knowledge of them until some time after the transaction was closed.

[4] ID.—AGREEMENT BETWEEN MORTGAGOR AND MORTGAGEE—NONRESPONSIBILITY TO JUNIOR LIENHOLDER FOR BREACH — WANT OF PRIVITY OF CONTRACT.—A mortgagee is not responsible to the holder of a trust deed subject to the mortgage for the application of the mortgage money solely to the payment for materials and labor actually used in the erection of a building on the mortgaged premises under an agreement between the mortgagor and the mortgagee that the money should be paid to a contractor for labor and material used in the construction of such a building, in the absence of any privity of contract between the mortgagee and junior lienholder.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

W. T. Sprowls for Appellant.

H. S. McCallum and Wm. J. Variel for Respondent.

SHAW, J.—The plaintiff appeals from the judgment in his favor in an action by him to foreclose a mortgage. His objection to the judgment is that it does not cover the amount secured by the mortgage.

The mortgage was executed by J. M. Mordoff and Olive Mordoff, husband and wife, on a lot in Hollywood, to secure the payment of their note to Silvius for three thousand dollars. The defendant, Elizabeth Snow, was made a party to the suit, under the allegation that she had or claimed an interest in the premises which was subject to the lien of the mortgage.

The defendants, J. M. Mordoff and Olive J. Mordoff suffered default. Elizabeth Snow appeared and answered. Upon the issues raised by her answer the court made findings and thereupon gave judgment against all of the de-

fendants foreclosing the mortgage for the sum of one thousand four hundred dollars, with interest and attorney's fees amounting to $1,664.98, together with costs. The judgment directed that if the foreclosure sale did not produce enough to pay said sums a deficiency judgment should be entered against Mordoff and wife for the balance. The judgment was apparently given upon the theory that the Mordoffs were not indebted to Silvius for the full amount of the note.

[1] The failure to direct a deficiency judgment against Mordoff and wife for the full amount of the note, interest, attorney's fees and costs was plainly an error and probably an inadvertence. They made no defense, the complaint states a good cause of action against them for the recovery of the full amount of the note, and a deficiency judgment should have been directed accordingly. The plaintiff is entitled to a reversal of the judgment with respect to them, with directions to the lower court to enter a judgment correcting this error.

The court found, in effect, that prior to the execution of the mortgage Elizabeth Snow was the owner of the lot mortgaged; that it was agreed by and between Mordoff and Elizabeth Snow that she should convey the lot to him in consideration of three hundred dollars in cash and his note for one thousand seven hundred dollars, secured by a trust deed of the lot, and that Mordoff should then borrow three thousand dollars by means of a first mortgage on the lot, the same to be paramount to such trust deed, of which sum, two thousand five hundred dollars was to be used by him in erecting on said lot a dwelling-house to cost at least three thousand dollars. It further found that thereupon she executed the deed to Mordoff, and that Mordoff and wife executed to Silvius the note and mortgage sued on and also the trust deed to Snow; that all these instruments were placed in escrow with the Title Guaranty and Trust Company to be delivered by it in proper order to the respective parties entitled thereto, together with five hundred dollars of the mortgage money to be paid to Mordoff; that the plaintiff was a party to the said escrow agreement; that the escrow agreement was that the balance of two thousand five hundred dollars called for by the mortgage was to be paid outside of the escrow by Silvius "in the construction of said

proposed dwelling-house as the construction work progressed; that the construction of a dwelling-house on said premises was commenced and partially constructed by a contractor for said Mordoff, but no building was ever completed thereon, and the construction thereof was abandoned in the fall of 1917; that of the two thousand five hundred dollars left in the hands of said F. D. Silvius to be used in the construction of said proposed dwelling'' he paid out in the matter of the construction of the building the sum of nine hundred dollars and no more. It also found that no money had been paid to Elizabeth Snow on the balance of her purchase price for the lot secured by the deed of trust, and that the mortgage note was wholly unpaid; that Silvius had notice of the agreement between Snow and Mordoff above described, and of the escrow instructions, and knew that the mortgage was given for a building loan to be used in paying for labor and material in the construction of the building on said mortgaged premises; ''that the said F. D. Silvius was negligent in the disbursement of said money intrusted to him, in paying out of the said sum of two thousand five hundred dollars only the sum of nine hundred dollars that went into or that was used in the construction of said building.''

The answer of Elizabeth Snow did not purport to state the defense to which these findings relate. It charges fraud by Mordoff and Silvius toward Elizabeth Snow, setting up, with much detail, a scheme by them to induce her to sell the lot to Mordoff upon the faith of his promise to borrow three thousand dollars on a first mortgage on the lot, give her a subordinate lien for the price of the lot by a trust deed thereon, use the borrowed money to build a house thereon for the better security of both liens and, having thus obtained title from her, to defraud her by converting the borrowed money to their own use and leave the lot unimproved. With respect to this defense the court found that Silvius was not guilty of any fraud or misrepresentation. In narrating the facts concerning the alleged fraud the answer sets forth the facts stated in the findings as above summarized, except on the point of negligence of Silvius in paying out the borrowed money. Negligence is not alleged. Construing these findings in the sense most favorable to the judgment (*Paine* v. *San Bernardino Co.*, 143 Cal. 656, [77 Pac. 659]; *Breeze* v. *Brooks*, 97 Cal. 77, [22 L. R. A. 257,

31 Pac. 742]), they appear to show that Silvius made a promise running to Elizabeth Snow that he would pay two thousand five hundred dollars of the borrowed money for labor and material actually used in the construction of the proposed house on the lot and that he failed to do so, except as to nine hundred dollars. [2] If this be so he would be responsible for the failure to perform his agreement, even if such failure was not the result of his negligence. (*Roussinet* v. *Rebout*, 76 Cal. 456, [18 Pac. 423].)

It thus appears that the findings and judgment proceed upon a theory not pleaded in the answer. It is very doubtful if the record can be said to show that the parties proceeded, without objection, to try the case upon the theory that the defense shown by the findings and judgment was in issue so that plaintiff is now precluded from raising the objection, as held in *Illinois etc. Co.* v. *Pacific Ry. Co.*, 115 Cal. 297, [47 Pac. 60], and *Gervaise* v. *Brookins*, 156 Cal. 112, [103 Pac. 332]. But, as we think the evidence does not support the findings and judgment, even upon the theory upon which they are apparently founded, and as the appellant bases his appeal upon this claim, it is unnecessary to consider any other question except the sufficiency of the evidence, to which we now proceed.

The deal was accomplished by the deposit of the instruments in escrow with the Title Guaranty and Trust Company and the subsequent complete delivery thereof by said escrow-holder. There were four separate deposits with the Trust Company, each accompanied with separate written instructions, signed by the depositor alone; one by Silvius under date of April 4, 1917, of a check for five hundred dollars, to be used when Mordoff's first mortgage was filed for record; one by Elizabeth Snow, under date of April 4, 1917, embracing her deed of the lot to Mordoff to be delivered on payment by Mordoff for her of three hundred dollars, and execution by him and his wife to her of the trust deed of the lot, subject to a three thousand dollar mortgage; and two by Mordoff, both under date of April 6, 1917, the first being a check of three hundred dollars, for Elizabeth Snow, and the trust deed of the lot to her, subject to the three thousand dollar mortgage, the second being the mortgage on the lot by Mordoff and wife to Silvius, to be delivered on payment of five hundred dollars, and stating that the balance

of the money borrowed thereon was to be paid "outside of escrow." The instructions of Silvius also stated that "balance of funds are to be paid outside of escrow."

None of these instruments contained anything indicating or implying that Silvius was to pay out the two thousand five hundred dollars balance only upon bills for material and labor used in constructing the proposed house, or anything at all with respect to the manner in which he was to make such payment, or the purpose for which the balance of two thousand five hundred dollars of the borrowed money was to be used.

[3] The only evidence produced by Elizabeth Snow tending to prove any agreement as to the application of the money to be borrowed by Mordoff from Silvius was her own testimony to the effect that she was the owner of the lot prior to the deal; that she never knew Mordoff in the transaction, but dealt through her own agent, J. J. Mann; that Mann represented to her that Mordoff was a prosperous builder who had a large amount of lumber and material on hand and that after obtaining title to the lot Mordoff would borrow three thousand dollars on the property and build a house on it to cost not less than four thousand dollars; that she relied on Mann's representations in selling the lot, and that she never saw Silvius nor had any communications with him until after Walters, the contractor, had abandoned work on the house. This evidence was objected to by the plaintiff on the ground that the representations made by Mann to her were not made in the presence or hearing of Silvius, but the court overruled the objection. It does not appear that Silvius had any knowledge of them, nor that Mordoff ever made any agreement with her to build a house on the lot with the money he borrowed, except from the evidence contained in a document signed by Mordoff and wife and Elizabeth Snow and delivered to Silvius on May 21, 1917, more than six weeks after the transaction was closed, which was given in evidence by Silvius. This writing stated that "Mordoff has agreed to construct one certain 8-room house on the lot." The representations of Mann were incompetent against Silvius, and having been objected to by him, that evidence must be disregarded. The information contained in the aforesaid document came to Silvius long after the deal was closed and it did not inform him that Elizabeth Snow was relying on him,

or even on Mordoff, to do anything with respect to the borrowed money then remaining in his hands, if any there was, which does not appear, although it did inform him that the plans of the house had been changed. It does not even state that the house was to be built with the money borrowed on the mortgage.·

The only evidence of any agreement by Silvius respecting the money borrowed was produced by him. He testified that Mordoff made a written application to him for a loan on the lot and that he agreed to make the loan. The application was then introduced in evidence. It directed Silvius to pay five hundred dollars of the money to be borrowed to the Trust Company and to "pay unto J. M. Walters such and sundry sums for material and labor for the construction of one certain 8-room double residence according to the plans herewith. When you can certify that you have paid the above amounts above enumerated, the accounting for the amounts due on the face value of the said mortgage will have been complete." This application was dated April 6, 1917.

[4] The application of Mordoff accepted by Silvius was an agreement between himself and Silvius, to which Elizabeth Snow was not a party. There is no evidence that Silvius was informed that Elizabeth Snow was relying on him to protect her trust deed by seeing to it that the money which he loaned to Mordoff and paid out on Mordoff's order to Walters for "material and labor for the construction of" the house on the lot, was actually paid out for labor and material which was actually used in the construction of the building. Under the evidence he was responsible to Mordoff alone for the proper payment of the money. There does not appear to be any privity of contract between Silvius and Elizabeth Snow .whereby he was put under obligation to her for the proper application of this fund, or became her trustee for that purpose. (*Holder Lumber Co.* v. *Scarborough,* 28 Cal. App. 154, [151 Pac. 674].) Moreover, the application of Mordoff does not by its terms bind Silvius to see that the material and labor for which the money was to be paid out was actually used in a building on the lot. It states that he should pay the same to Walters "for material and labor *for* the construction of such building." There is no evidence to show that the materials and labor for which bills were rendered to him by Walters, and which he paid to the amount of two

thousand five hundred dollars, were not bills for material purchased *for* the construction of the building on that lot, or that the labor which the money paid for was not labor upon the house. In a technical aspect of the case, therefore, there is no evidence of any actual breach of the obligation to Mordoff. It does not appear but that Mordoff sanctioned the payments that were made to Walters. It is entirely consistent with the evidence that Walters may have purchased the material for the construction of this building and thereafter diverted it to one or more other buildings which he was erecting at the same time. The evidence shows that he was then erecting other buildings under similar conditions and indicates that he may have done this very thing. It also tends to show that Walters was the real defaulter and that all the other parties concerned suffered injury therefrom.

It must be remembered that the burden of proof was on defendant Snow to establish the facts of her defense. The execution of the note and mortgage was not denied. In the absence of any evidence Silvius was entitled to judgment of foreclosure against her for the full amount of the note. Consequently, she should have opened the case at the trial. Silvius opened the case, apparently on the theory that she should first exculpate him from the charge of fraud. He had no such burden. There was nothing to show any confidential relation between the two, or to put him in the position of a trustee for her as to the expenditure of the money he loaned.

We are, therefore, of the opinion that the evidence does not support the findings, so far as they may be construed to declare that Silvius was responsible to Elizabeth Snow for the application of the two thousand five hundred dollars solely to the payment for materials and labor actually used in erecting the building on the lot. Without this construction, the findings do not support the judgment. A reversal is therefore necessary as to all the defendants.

The judgment is reversed.

Olney, J., and Lawlor, J., concurred.