[Civ. No. 10787.   Third Dist.   June 2, 1965.]

CLARENCE E. MATTHEWS et al., Defendants, Cross-complainants and Appellants, v. A. F. HINTON, as Trustee, etc., et al., Defendants, Cross-defendants and Respondents.

Bradford, Cross, Dahl & Hefner for Defendants, Cross-complainants and Appellants.

J. Robert Notz, Jr., for Defendants, Cross-defendants and Respondents.

FRIEDMAN, J.—The trial court granted a summary judgment motion denying relief to appellants on their cross-complaint seeking damages for an allegedly wrongful sale by a trust deed holder. They appeal.

Appellants are Clarence and Mabel Matthews, husband and wife, who owned a tract of unimproved land. In May 1960 they leased it for 65 years to Nick Pandelis Homes, Inc. Rental was fixed at $350 per month during the first five years of tenancy and $400 per month during the remainder of the term, with adjustments for changes in dollar purchasing power. The lessee had power to sublet and assign. In a subordination clause the Matthews agreed to subordinate their title and to join in any deed of trust given to secure construction loans for improving the property.[1] The next month the Pandelis corporation sublet the property to Gervais and Lucot. The sublessees wished to borrow money on the property for development purposes and to have the Matthews subordinate their interest to a trust deed. They gave the Matthews an assumption agreement guaranteeing performance of the Pandelis corporation's obligation under the master lease. Gervais and Lucot then borrowed $100,000 from Diamond Builders Finance Corporation (whom we shall refer to as "Diamond").

[1]The full text of the subordination clause is: "Lessor agrees to subordinate their title and interest to any and all construction loans or loan obtained by Lessee for the purpose of constructing improvements on said premises. Lessor will join on any deeds of trust required by lenders or lending institutions for the purpose of giving as security for said construction loans title to said property; it being understood that Lessor will not personally be liable for said construction loan or loans. No construction loans shall exceed eighty (80) percent of the cost of construction. At any time during the life of this lease, at the request of Lessee, Lessor shall join on construction loan or loans for the purpose of constructing improvements on said property. All improvements shall remain the property of Lessee during the life of this lease. Lessee covenants and agrees to make all payments called for by said construction loans and to hold harmless Lessor for any damage suffered by failure of Lessee to make the payments called for by said construction loan or loans. Lessor agrees that title to said property shall be free and clear of all liens and encumbrances except those placed on said property by Lessee."

The debt was secured by a deed of trust with power of sale, which was executed by Mr. and Mrs. Gervais, Mr. and Mrs. Lucot, and Mr. and Mrs. Matthews, all of whom were collectively designated as "Trustor." The promissory note evidencing the debt was signed by the Gervais and Lucots alone.

Gervais and Lucot defaulted on the note and Diamond, the trust deed holder, commenced sale proceedings. Gervais and Lucot filed suit against Diamond, seeking to enjoin the sale. The Matthews, who had refused to join as plaintiffs, were named as codefendants. Notwithstanding the suit, the property was sold at a trustee's sale in December 1961. Either at the trustee's sale or subsequently, the Matthews bought back the property. They filed a cross-complaint in the lawsuit, alleging that Diamond had wrongfully sold the property at the trustee's sale and seeking damages of $145,000, alleged as the market value of the land. In substance the cross-complaint alleged: (1) that the deed of trust was signed by the Matthews as sureties only, and therefore, before selling the property, Diamond should first have resorted to other assets of Gervais and Lucot, the principal debtors; (2) that after execution of the deed of trust Diamond advanced other money to Gervais and Lucot, which was used for purposes other than construction of improvements on the leased property; that, in violation of a restriction in the subordination agreement (see fn. 1, *supra*) the total amount advanced by Diamond exceeded 80 per cent of the improvement costs; that the due date on the promissory note was extended without the Matthews' consent, thus releasing them from liability.

Eventually the injunction complaint was dismissed, but the Matthews' cross-complaint remained pending. Diamond then moved for a summary judgment. Supporting the summary judgment was an affidavit alleging that there were no agreements between the Matthews and Diamond other than the trust deed. This averment was not controverted by the Matthews' counteraffidavits, which alleged only that Gervais and Lucot had knowledge of the Matthews-Pandelis lease and had agreed to maintain performance of that lease in the event of a default by Pandelis. After hearing the motion and considering the affidavits, the trial court determined that the cross-complaint presented no triable issue of fact against Diamond and granted the motion.

On a motion for summary judgment the trial court is not to make determinations of fact but only to decide whether factual issues are presented by the affidavits. (*Eagle*

*Oil & Refining Co.* v. *Prentice,* 19 Cal.2d 553, 555-556 [122 P.2d 264].) ██ If there is no substantial issue of fact to be tried, a summary judgment is appropriate. (*Loma Portal Civic Club* v. *American Airlines, Inc.,* 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548]; *Continental Constr. Co.* v. *Thos. F. Scollan Co.,* 228 Cal.App.2d 385 [39 Cal.Rptr. 432].) Appellants claim status as sureties as a matter of law; that various provisions of the Civil Code required Diamond to resort first to the property of Gervais and Lucot, the principal debtors, before selling appellants' interest at the trustee's sale; hence, that the trial court incorrectly decided the legal question confronting it in the summary judgment proceeding. In any event, appellants urge, the governing contracts are ambiguous, requiring interpretation by extrinsic evidence; hence there was a triable issue of fact demanding that the case be tried rather than decided by the summary judgment procedure.

Pertinent statutory principles are these: One who promises to answer for the debt of another or hypothecates property as security for the debt of another is a surety. (Civ. Code, § 2787.) A surety may require the creditor to proceed against the principal, and if the creditor neglects to do so, the surety may be exonerated. (Civ. Code, § 2845.) Whenever property of a surety is hypothecated with property of the principal, the surety is entitled to have the latter's property first applied to the discharge of the debt. (Civ. Code, § 2850.) One who appears by the terms of a written instrument to be a principal may show that he is in fact a surety, except as against a person who has acted on the faith of his apparent character as principal. (Civ. Code, § 2832.)

Appellants' present claim to suretyship garb and immunities is at variance with the role in which they contracted. ██ The suretyship relation arises where two persons are under obligation to the same creditor, but one of them bears the ultimate burden of the obligation. The obligor ultimately responsible for the debt is the principal and the other is the surety. (*Everts* v. *Matteson,* 21 Cal.2d 437, 447 [132 P.2d 476]; Rest., Security, § 82.) ██ Whether one is a surety depends not so much upon his relation with the creditor as upon his relation to the principal debtor. (*Everts* v. *Matteson, supra,* 21 Cal.2d at pp. 446-447; 4 Williston on Contracts (1936 ed.) § 1211, pp. 3481-3482.) ██ In such a tripartite relationship one of the obligors may be a surety in the sense that, if he is called upon to pay the debt, he may

indemnify himself by an action against the primary obligor; nevertheless, so far as the creditor is concerned, he contracts for a primary liability. ▪ One who signs a security document or other contract as a principal will be held as such even though the creditor knows that as between the signer and his fellow obligor, the former is only a surety. (*California Nat. Bank* v. *Ginty,* 108 Cal. 148, 150-151 [41 P. 38]; see also *Budget Finance Plan* v. *Sav-On Food Club, Inc.,* 44 Cal. 2d 565, 569 [283 P.2d 694]; *Casey* v. *Gibbons,* 136 Cal. 368 [68 P. 1032]; *Estate of Chamberlain,* 44 Cal.App.2d 193, 200 [112 P.2d 53, 934]; Rest., Security, § 82, com. h; 72 C.J.S., Principal and Surety, § 3, p. 516, note 25.)

▪ The role in which appellants contracted is depicted on the face of the papers. Appellants were the owners of unimproved land. They leased it to a developer for 65 years for ground rentals aggregating $309,000. As lessors they had a direct financial interest in the construction of improvements which would produce income and ground rent. The lessees or sublessees might have attempted to put up their tenancy for years as security for construction loans. (See *Chapman* v. *Great Western Gypsum Co.,* 216 Cal. 420, 425 [14 P.2d 758, 85 A.L.R. 917].) A fee simple estate would be far more attractive security to a lender. For the promotion of their personal financial interests appellants agreed with their tenants to subordinate their reversionary estate to any future trust deed securing a construction loan. They fulfilled that agreement by means of a trust deed in which they joined with their tenants as "trustor." In so doing, they contracted directly with the lender, exposing their reversionary interest to direct liability independently of auxiliary collection attempts against the borrowers. There was nothing in the trust deed to tell the lender that its power of sale was limited to the sublessees' estate for years. The liability of appellants' reversionary interest was primary, not secondary. In signing the trust deed as "trustor," appellants as principals entered into a direct contractual relationship with Diamond for their own financial benefit. Having signed the trust deed as principals, they subjected their reversionary interest to primary liability.

▪ Appellants assert an ambiguity or contradiction in the documents, requiring a trial in which parol evidence would be received. This contradiction is said to arise from the fact that appellants signed the trust deed but not the promissory note. There is no contradiction. ▪ A mort-

gage or deed of trust secures the debt and not the note which evidences it. (*Schwerin* v. *Shostak,* 213 Cal.App.2d 37, 42 [28 Cal.Rptr. 332]; *Dool* v. *First Nat. Bank,* 107 Cal.App. 585, 588 [290 P. 478].)　　A trustor may make his property interest primarily liable for the debt without ever having signed a note. (*Casey* v. *Gibbons, supra,* 136 Cal. 368.) The absence of appellants' signature on the note is perfectly consistent with the fact that appellants were not borrowing money but contracted directly with the lender by making their property primarily liable for the debt.

　　Appellants had a right to show, if they could, that they were actually sureties even though they signed the trust deed as apparent principals. (Civ. Code, § 2832.) Appellants did not do so.　　Their affidavits in response to the summary judgment motion alleged no facts at all except that Diamond had knowledge of the master lease and of the assumption agreement by Gervais and Lucot. As we have seen, the creditor's knowledge of the relationship between appellants and Gervais and Lucot did not make sureties of the former. Appellants' affidavits thus raised no triable issue of fact. The relationship of the parties being fixed by the unambiguous terms of their agreements, appellants' status as principal rather than surety involved only a question of law, not one of fact. (See *Ackley* v. *Prime,* 99 Cal.App. 534, 539 [278 P. 932].)

　　We dispose of a group of subordinate questions: (a) The cross-complaint alleges that Gervais and Lucot used some loan proceeds from Diamond for purposes other than construction. The loan documents did not restrict use of the proceeds. Diamond, the lender, was under no obligation to see that the loan money was used in accordance with a contract to which it was not in privity. (*Silvius* v. *Mordoff,* 183 Cal. 628, 634 [192 P. 289].) This allegation of the cross-complaint stated no ground of relief. (b) Diamond's lack of obligation to enforce the subordination agreement also answers the contention that loan money advanced by it exceeded the 80 per cent of improvement cost limit fixed by the subordination agreement. (c) The allegation that Diamond extended the due date of the promissory note without appellants' consent, thereby releasing appellants, seemingly overlooks a provision in the trust deed which explicitly authorized the trustee to extend the time of payment without notice to anyone.

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.