[No. 13776-7-III.   Division Three.   June 27, 1995.]

YVONNE HONEY, ET AL., *Appellants*, v. ROBERT J. DAVIS, ET AL., *Respondents*.

Patrick F. Hussey and Velikanje and Moore & Shore, for appellants.

Ronald A. Roberts and Eisenhower, Carlson, for respondents.

MUNSON, J. — Yvonne Honey, Yvonne Sikes, and Steven Honey (the Honeys) appeal the summary judgment dismissal of their claims against Dr. Robert J. Davis and Mid-Valley Mall Ltd. Partnership (together, Mid-Valley).

Dr. Davis and Earl McCarthy were partners in Mid-Valley, a general partnership formed to locate and develop property for a shopping mall. In 1979, Mid-Valley purchased property in Sunnyside for that purpose. To make the mall successful, it needed to acquire adjacent property to accommodate larger retail outlets. Sunnyside Theaters, Inc., owned land adjacent to Mid-Valley's. Mid-Valley began negotiations with Lloyd Honey, owner of Sunnyside Theaters. It appears both Mr. Honey and Mr. McCarthy died before a final agreement was reached.

In February 1984, Mr. Honey's successors, the Honeys, and Mid-Valley entered into a 40-year subordinated ground lease for 6.8 acres of land adjacent to the mall site. Under the terms of the lease the Honeys would receive a lump sum rent for the first seven months, during which time improvements were to be constructed; after that time, they were to receive a fixed annual rent plus a percentage of any "excess rents" paid by the subtenants. At the termination of the lease, all improvements were to revert to the Honeys, cost-free. One of the lease provisions required the Honeys to subordinate their reversionary interest as lessors to the mortgage lien securing loan proceeds used to construct improvements on the property.

The Honeys' property was to be included in phase one[1] of the development.

To finance phase one of the development in June 1985, Mid-Valley borrowed money from Rainier Financial Services Company, from which it had borrowed funds to finance the original development of the mall. The Honeys were not requested to, nor did they, sign the note, but they did sign the deed of trust securing the loan from Rainier. There were several subsequent modifications to this deed of trust, but in May 1989, the amounts owing under previous loans were "rolled" into a new loan. Again, the Honeys joined in an amended deed of trust subjecting their property to the first lien of Rainier for the entire debt, but were not responsible on the loan itself.

In mid-January 1992, Rainier served a nonjudicial notice of default. Eventually Rainier proceeded with the foreclosure and the trustee sold the mall property, including the Honey property, to Rainier for the debt owed.

The Honeys sued Dr. Davis and Mid-Valley, asking for reimbursement for the loss of the property. The Honeys alleged they had hypothecated the property as sureties to secure the debt to Rainier. Both parties moved for summary judgment. The trial court denied the Honeys' motion and granted Mid-Valley's.

■ The Honeys contend they were sureties for Mid-Valley to the extent they subordinated their interest in the property to secure development financing for the mall. Consequently, they argue they are entitled to reimbursement to the extent they satisfied Mid-Valley's debt. The standard of review on appeal from summary judgment is well settled and need not be repeated. *See, e.g., Mountain Park Homeowners Ass'n, Inc. v. Tydings*, 125 Wn.2d 337, 883 P.2d 1383 (1994).

Suretyship is the relation which exists where one person has undertaken an obligation and another person is also

---

[1]Phase one appears to refer not to the original development, but to the first expansion of the mall.

under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform.

Restatement of Security § 82 (1941). A surety may be bound to a creditor "by pledging of a chattel, mortgaging of a chattel or land, or by otherwise using his property to secure the creditor". Restatement of Security § 82, comment h (1941). One of the examples of suretyship given in the Restatement is where "[t]wo persons contract with each other and also with a third person so that one is under a personal and the principal obligation to the third, while the second agrees to devote certain property as security to the third, although he does not otherwise assume any obligation." Restatement of Security, Scope Note 2 at 225 (1941).

By subordinating their reversionary interest as lessors, the Honeys became liable to Rainier for the money loaned to Mid-Valley, but only to the extent of the value of their property. The principal is the one to whom and from whom the consideration for the main obligation flows. 74 Am. Jur. 2d *Suretyship* § 3 (1974). Here, there is no indication in the record that any of the loan proceeds were paid to the Honeys. Also, the promissory note underlying the deed of trust was signed only by Mid-Valley, not the Honeys. It is clear that Mid-Valley, rather than the Honeys, is the principal obligor and, as such, should have been the one to perform the obligation.

Whether a lessor in a long-term subordinated ground lease may claim to be a surety for the lessee appears to be a question of first impression in Washington. The handful of published cases from other states which have addressed the question unanimously hold a long-term subordinated lessor is not a surety, but is a principal. *See Matthews v. Hinton*, 234 Cal. App. 2d 736, 44 Cal. Rptr. 692 (1965); *Guaranty Mortgage Co. v. Ryan Supply Co.*, 363 So. 2d 739 (Miss. 1978); *State of Wisconsin Inv. Bd. v. Hurst*, 410 N.W.2d 560 (S.D. 1987). Those cases are distinguishable in that each deals with a lessor attempting to assert a surety's defense against the lessee's lender/creditor.

In *Matthews,* the court recognized the rule that when a surety signs a security document as a principal, the creditor may estop him from denying his status as such. That rule does not affect the relationship between the surety and the principal, however. *Matthews,* 44 Cal. Rptr. at 696. That rule has been recognized in Washington as well. In *Leuning v. Hill,* 79 Wn.2d 396, 400, 486 P.2d 87 (1971), the court noted that while comakers of a promissory note may appear on the face of the writing as principals, they may in fact occupy the relation of principal and surety.

Here, the Honeys are not asserting their suretyship status against a creditor, but against the principal. Thus, they are not estopped from relying on their status as sureties by the form of their signature on the deed of trust. *Matthews* also states a lessor could not be a surety because the lessors subordinated their interest for "the promotion of their personal financial interests" and that they had exposed their interest to "direct liability independently of auxiliary collection attempts against the borrowers". *Matthews,* 44 Cal. Rptr. at 696. However, the very nature of a suretyship is that the surety is directly liable to the creditor. A creditor need not attempt to collect from the principal before making demand on the surety unless the surety's contract is for a "guaranty of collection". Restatement of Security § 82, comment f (1941). Likewise, the fact the surety stood to benefit from the transaction does not preclude surety status. Indeed, a compensated surety may enter a suretyship contract solely because it intends to benefit from the agreement. *See* Restatement of Security § 82, comment i (1941). Here, although the Honeys may have benefited indirectly from the subordination, the primary benefit of the contract to which they were sureties, the Rainier loan, went to Mid-Valley.

■ We hold the lessor in a long-term subordinated ground lease may stand as a surety for the lessee. Thus, summary judgment dismissal in favor of Mid-Valley was in error.

The Honeys also contend that none of the several affirmative defenses raised by Mid-Valley will support summary judgment dismissal of their claims. The first of those affirmative defenses was that the statute of frauds, RCW 19.36.010, renders the agreement unenforceable. RCW 19.36.010, provides:

> In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, . . . (2) *every special promise to answer for the debt, default, or misdoings of another person*;

(Italics ours.) Mid-Valley argues the lease does not provide for a suretyship. The lease requires the Honeys to subject their interest in the property to the lien of the lender financing the construction. This is functionally the equivalent of hypothecating the property. The deed of trust shows the Honeys did so. While the lease may not use the word "suretyship", compliance with its terms places the Honeys in such a position. The lease, together with the deed of trust, are adequate writings to avoid the statute of frauds.

Mid-Valley argues the Honeys have failed to state a claim because their relationship is defined by the lease. However, construction of the terms of the lease gives rise to a suretyship. *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990). Thus, the Honeys have stated a claim upon which relief may be granted.

Mid-Valley argues the Honeys should be equitably estopped from asserting a suretyship exists. Equitable estoppel is appropriate where (1) one party has made an admission, statement or act inconsistent with a claim afterwards asserted; (2) the other party acts in reasonable reliance on the admission, statement, or act; and (3) the relying party will be injured if the court allows the first party to contradict or repudiate the earlier admission, statement, or act. *Robinson v. Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318, *cert. denied*, 113 S. Ct. 676 (1992). Mid-Valley

maintains the lease should be considered an earlier statement by the Honeys. Even if so, equitable estoppel must be based upon a representation of existing or past facts, not issues of law, *Chemical Bank v. Washington Pub. Power Supply Sys.*, 102 Wn.2d 874, 905, 691 P.2d 524 (1984), *cert. denied*, 471 U.S. 1065 (1985), and the lease is not such a representation. Further, the Honeys are not contradicting anything in the lease but are arguing the legal effect of the agreement. The Honeys are not equitably estopped from claiming a suretyship existed.

Next, Mid-Valley argues the Honeys waived their right to claim a suretyship exists by not expressly providing such a remedy in the lease. However, the provisions of the lease implicitly create a suretyship. Mid-Valley argues further the Honeys waived their right to claim a suretyship exists by consenting to modifications of the loan agreement with Rainier. However, if the lease creates a suretyship, consenting to those modifications would have no effect on Mid-Valley's obligations to reimburse the Honeys as sureties. The Honeys have not waived their claim.

Mid-Valley argues the parol evidence rule bars the Honeys' claim. However, the Honeys' claim arises as an incident of the lease and later acts; they are not attempting to vary, add to, or contradict the terms of the lease. The parol evidence rule is inapplicable.

Mid-Valley argues the Honeys were comparatively negligent. Because the Honeys' claim against Mid-Valley is not based upon "fault", comparative negligence has no application. RCW 4.22.005, .015.

Mid-Valley argues there was no consideration to support a suretyship contract. However, as an incident of the lease, the suretyship would be supported by the consideration supporting the lease.

Finally, Mid-Valley argues the Honeys failed to mitigate their damages. The evidence indicates it would have taken in excess of $10,000,000 to save the mall from foreclosure. However, Mid-Valley also maintains the Honeys, although invited, did not participate in negotiations to avoid foreclosure. The Honeys contend they offered to participate and heard nothing from Mid-Valley. Whether the

Honeys could have avoided any of the harm they suffered by reasonable efforts or expenditures is a question of fact. Further, the defense of failure to mitigate concerns only the amount of damages, not liability.

None of the affirmative defenses raised by Mid-Valley will support summary judgment in its favor. The summary judgment dismissal of the Honey's claims must be reversed. Additionally, because there are no material questions of fact regarding the existence of a suretyship between the parties, we grant the Honeys' motion for partial summary judgment as to liability and remand for a determination of damages.

Reversed and remanded.

THOMPSON, C.J., and SWEENEY, J., concur.

After modification, further reconsideration denied September 6, 1995.

Review granted at 128 Wn.2d 1016 (1996).